IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br><br>    Plaintiff / Counterclaim Defendant,<br><br>v.<br><br>TRANSAMERICA FINANCIAL LIFE INSURANCE COMPANY, TRANSAMERICA LIFE INSURANCE COMPANY, WESTERN RESERVE LIFE ASSURANCE CO. OF OHIO, MONUMENTAL LIFE INSURANCE COMPANY, MERRILL LYNCH LIFE INSURANCE COMPANY, and ML LIFE INSURANCE COMPANY OF NEW YORK,<br><br>    Defendants / Counterclaim Plaintiffs. | CASE NO: 1.08-CV-00135-JVB-RBC |

**TRANSAMERICA'S REPLY IN SUPPORT
OF ITS MOTION TO COMPEL DISCOVERY**

Defendants Transamerica Financial Life Insurance Company, Transamerica Life Insurance Company, Western Reserve Life Assurance Co. of Ohio, Monumental Life Insurance Company, Merrill Lynch Life Insurance Company, and ML Life Insurance Company of New York (collectively "Transamerica") respectfully submit this Reply in support of the motion to compel production of discovery filed against Plaintiff Lincoln National Life Insurance Company ("Lincoln").  (Docket No. 89).

**INTRODUCTION**

Lincoln initiated this patent infringement lawsuit against Transamerica over a year ago, but has stonewalled discovery relating to fundamental issues in this case, including issues of

patent invalidity, patent unenforceability (inequitable conduct), and Lincoln's purported damages.  Transamerica is entitled to discovery on each of these issues, and therefore seeks an Order from the Court compelling Lincoln to (1) provide substantive and complete answers to Interrogatory Nos. 10, 12, and 16-20; (2) produce documents in response to Document Request Nos. 67-76, 81, 82, 84, 86, 88, 90, 92, 94, 96, 98, 100, 102, 104, 107, 108, and 111-122; (3) respond to Request for Admission Nos. 1-11; and (4) produce witness(es) to testify regarding Topics 1-3 identified in Transamerica's Rule 30(b)(6) Deposition Notice.

Lincoln's Opposition (Docket No. 125) exemplifies Lincoln's approach to its discovery obligations in this case -- that is, to delay and obstruct Transamerica's efforts to obtain basic discovery concerning the patent at issue in this litigation and its prosecution before the U.S. Patent and Trademark Office ("PTO").  Transamerica submits this Reply to address several key issues, and to help bring the issues back into clear focus:

1) *The Prosecution of and Prior Art Concerning the '608 Patent*:  Much of the discovery that Transamerica moves to compel relates to its defenses of patent invalidity and patent unenforceability (inequitable conduct).  Lincoln has refused to produce this discovery on the basis that it is "related to inequitable conduct which currently is not a claim and/or defense in this litigation." (Docket No. 125 at 2).  Lincoln's objection is beside the point.  Transamerica is entitled to discovery related to the prosecution of the patent-in-suit regardless of whether its amended answer is allowed -- indeed, the very purpose of discovery is for parties to develop their claims and defenses, both pled and unpled.  Lincoln should not be allowed to avoid its discovery obligations by arguing, on the one hand, that its conduct before the PTO is irrelevant and, on the other, that Transamerica has failed to plead the specific conduct before the PTO amounts to inequitable conduct.

2) *Double Patenting*:  Lincoln's Opposition does not dispute that the issue of "double patenting" (the granting of two patents for a single invention to the same owner) is properly pled, nor does it dispute its obligation to respond to interrogatories asking about the distinctions among the '608, '201 and '815 patents.  However, Lincoln seeks to delay responding until the Court construes the claim terms of the '608 patent.  Transamerica is entitled to the discovery *now* -- the claims of the '201 and the '815 patents have already been construed, and Lincoln has served proposed definitions for the asserted '608 patent claims.  Lincoln has no reason to delay, and should provide responses immediately.

      3) *Reasonable Royalty Rate*: Lincoln's Opposition does not dispute that the issue of a "reasonable royalty rate" is relevant to damages, nor does it dispute that it must respond to discovery requests on this issue. However, Lincoln seeks to delay responding to these requests until expert discovery. Transamerica is entitled to responses *now*. Lincoln has no good reason to delay, especially since expert discovery has already been completed in the '201 and the '815 cases, and Lincoln should know its damages position with respect to the '608 patent.

      4) *Lincoln's Competitive Intelligence Gathering*: Lincoln's Opposition argues that it has produced over 110,000 pages "as being potentially responsive to [Transamerica's] requests." (Docket No. 125 at 16-17.) However, Lincoln has refused to say whether it has searched for and produced *all* documents relating to Lincoln's competitive intelligence gathering. Lincoln's discovery obligations are not met by producing *some* responsive documents.

      5) *Inventors' Communications Regarding Annuity Products and Guaranteed Living Benefits*: Although Lincoln's Opposition says that it has already produced applications and file histories related to the prosecution of the '608 patent, it fails to say whether Lincoln has produced all responsive documents from the named inventors of the '608 patent relating to annuity products and guaranteed living benefits.

      6) *Lincoln's Use of Computer Systems to Administer Its Own Annuities*: Lincoln's Opposition concedes that this requested discovery is relevant to issues in the case, yet refuses to produce a witness on this 30(b)(6) topic. Lincoln should be compelled to produce a witness.

For over ten months, Lincoln has refused to respond to these discovery requests. Transamerica is entitled to discovery in Lincoln's possession that will help it establish its defenses against Lincoln's allegations of patent infringement. Accordingly, Transamerica respectfully requests that the Court grant its motion to compel discovery in its entirety.

## ARGUMENT

**A.   Transamerica Is Entitled to Discovery Related to Issues of Inequitable Conduct and Patent Invalidity.**

During the prosecution of the '608 patent, Lincoln intentionally withheld highly material references from the PTO describing competing annuity products with features Lincoln claimed were not present in the prior art. Lincoln regularly monitored the variable annuity products offered by its competitors (including public filings), recognized the features of these competing annuities, and deposed Transamerica's expert witness about them in the '201 and '815 prior

cases.  Yet, Lincoln disclosed only one public document with details of a competitor's annuity to the PTO during prosecution of the '608 patent application, even though its own records (including those of its "Competitive Intelligence Group") and deposition testimony reveal that Lincoln was well aware of other competing annuities at the time it was prosecuting the application that led to the '608 patent.  (*See generally* Transamerica's Brief in Support of Its Motion to Amend, Docket No. 54; and Transamerica's Amended Motion to Amend Its Answer and Counterclaim, Docket No. 120).

Much of the discovery that Transamerica moves the Court to compel Lincoln to produce relates to defenses of inequitable conduct and patent invalidity involving the '608 patent, including Interrogatory Nos. 19-20, Document Request Nos. 81, 82, 84, 86, 88, 90, 92, 94, 96, 98, 100, 102, 104, 108, 111-121, Request for Admission Nos. 1-11, and 30(b)(6) Topics 1-2.  For example, Interrogatory Nos. 19 and 20 request information relating to prior art and Lincoln's disclosure -- or failure to disclose -- the information to the PTO:

> 19.    Describe in detail Lincoln's policies and procedures for identifying documents possessed by its employees that are material to the patentability of its pending patent applications.

> 20.    For each document disclosed to the Patent Office during prosecution of the '608 Patent, and in the Information Disclosure Statements in the pending reexamination of the '201 Patent (issued parent of the '608 Patent), state:
> a.    the date on which Lincoln or Barnes & Thornburg first learned of the document;
> b.    the Lincoln or Barnes & Thornburg employee(s) who possessed the document;
> c.    how the document was acquired by Lincoln or Barnes & Thornburg;
> d.    when the document was provided to Barnes & Thornburg;
> e.    the person or persons responsible for determining that the document should be submitted to the Patent Office;
> f.    for the Uncited Annuity Products, the reasons why the Uncited Annuity Products were not previously cited.

If the Court grants Transamerica's motion to amend, then Lincoln's objection here is moot.  But even if the Court does not grant Transamerica's motion to amend, Transamerica is entitled to responses to this discovery.  *See e.g.*, *Response Acquisition LLC v. U.S. Steel Corp.*, No. 2:05 CV 423, 2007 U.S. Dist. LEXIS 83598, at *4 (N.D. Ind. Nov. 8, 2007) (relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is *or may be* in the case.") (emphasis added and internal citations omitted); *Simon v. Whichello*, No. 1:05 CV 333, 2006 U.S. Dist. LEXIS 49391, at *5, 8-10 (N.D. Ind. Jul. 18, 2006) (finding information reflecting a subject not pled as an affirmative defense relevant and discoverable); *Lakewood Eng'g & Mfg. Co. v. Lasko Prods.*, No 01 C 7867, 2003 U.S. Dist. LEXIS 3867, at *4-5 (N.D. Ill. Mar. 13, 2003) (discovery "should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action.") (internal citations omitted).  Thus, discovery related to inequitable conduct is appropriate here.  Further, these discovery requests are relevant to invalidity, which is an asserted defense, and thus Transamerica is entitled to responses.

Moreover, Lincoln's argument puts the cart before the horse.  Courts routinely hold that parties are allowed discovery relating to inequitable conduct before the defendant asserts or pleads the defense.  *See e.g.*, *Ormco Corp. v. Align Tech., Inc.*, No. SACV 03-16 CAS, 2008 WL 4501805, at *9-10 (C.D. Cal. Oct. 3, 2008) (acknowledging need for parties to obtain discovery relating to inequitable conduct before pleading in an answer because of need to satisfy FRCP 9(b)); *Board of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, No. C 05-04158, 2008 WL 624771, at *7 (N.D. Cal. Mar. 4, 2008) (same); *Enzo Life Sci., Inc. v. Digene Corp.,* 270 F. Supp. 2d 484, 489 (D. Del. 2003) (same); *MercExchange, LLC v. Ebay, Inc.*, 271 F. Supp. 2d 784, 786-89 (E.D. Va. 2002) (same).

Further, Lincoln admits that discovery related to its awareness of the five references cited by Transamerica in its proposed counterclaims is relevant.  (Docket No. 125 at 10.)  Presently, Transamerica has enough information to assert inequitable conduct in relation to five references, but that does not preclude Transamerica from discovery related to other art that Lincoln may not have disclosed to the PTO during the prosecution of the '608 patent.  If there are other references that Lincoln did not disclose to the PTO, Transamerica is entitled to know what they are and when Lincoln became aware of them.  Lincoln may not shield against an inequitable conduct claim by obstructing discovery of relevant documents.

Lincoln's argument that the requested information is all privileged fares no better.  Transamerica has continually stated that it is not looking for privileged material in response to these discovery requests (*see, e.g.,* Docket No. 90 at Ex. 23).  Yet, Lincoln asserts privilege to all the purported documents relating to Lincoln's awareness of the prior art and any policies and procedures relating to its prosecution practices.  However, policies and procedures relating to prosecution practices are not communications to clients, nor are they made in anticipation of litigation.  *See e.g.*, *McGrath v. Everest Nat'l Ins. Co.*, No. 2:07 CV 34, 2009 WL 1325405, at *1-3 (denying a motion to quash a third-party subpoena of a law firm requesting disclosure of the "firm's procedures for compliance with professional ethics obligations" because the documents are not privileged).  Lincoln does not demonstrate otherwise.  Thus, at the least, the policies and procedures are discoverable.  Further, while communications between clients and attorneys are privileged, the underlying facts are not.  *See Upjohn Co. v. United States,* 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.").  Thus, the fact and date

of Lincoln's awareness of the prior art, though potentially the subject of an attorney-client communication, are not privileged information and Lincoln is obliged to disclose them.

*In re Spalding*, which Lincoln cites, is inapposite. That decision concerned whether privilege attached to communications made by a client to an attorney. *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000). This case did not involve policies and procedures followed by prosecuting attorneys when submitting an application to the PTO. *See id.* at 802 n.2 (the case considers the applicability of privilege to inventor records). Nor does *In re Spalding* apply to the timing of when Lincoln became aware of certain prior art or any prior art that Lincoln became aware of outside of client communication. *Id.*

Lincoln does not point to any document on any of the privilege logs associated with either the '201 or the '815 cases to demonstrate how each and every one of the documents responsive to Transamerica's request is privileged or otherwise protected. It is Lincoln's burden to demonstrate that the documents are protected. *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., Inc.*, 132 F.R.D. 204, 207 (N.D. Ind. 1990). Absent a demonstration of how each of the documents is protected, Lincoln's assertion of these privileges is unfounded.

**B.**     **Transamerica Is Entitled to Discovery Related to Its Double Patenting Defense.**

Lincoln should be compelled to respond to Interrogatory Nos. 10, 17, and 18 because this discovery relates to Transamerica's double patenting and invalidity defenses:

> 10.    Explain in detail what Lincoln claims is the invention of the '608 invention, including a specific explanation as to how the purported invention of the '608 patent is distinct from the purported invention of the '815 patent and the '201 patent.

> 17.    Explain how the claims of the '608 patent would be literally infringed without literal infringement of the '815 patent, and explain how the claims of the '815 patent would be literally infringed without literal infringement of the '608 patent.

> 18.   Explain how the claims of the '608 patent would be literally infringed without literal infringement of the '201 patent, and explain how the claims of the '201 patent would be literally infringed without literal infringement of the '608 patent.

Lincoln's proffered reasons for needing additional time to respond to these interrogatories are unavailing. Even if, as Lincoln's case law states, a court is required to complete claim construction before making a double patenting determination, that does not mean that a party can avoid discovery relating to this issue. The terms of the '201 patent and the '815 patent were already construed and, therefore, cannot provide a viable basis for Lincoln's objection. Further, Lincoln was under a Rule 11 obligation to have a basis upon which to assert infringement of the '608 patent; as such, it must have had some understanding of the terms of claims at issue. These interpretations were crystallized when Lincoln submitted its claim constructions to the Court. Indeed, even if the Court were to agree with Transamerica on every one of the disputed terms of the '608 patent, the fact remains that Lincoln has at this moment its own understanding of the terms and therefore can (and must) respond to these interrogatories based upon its current understanding. If it turns out that its interpretations of the '608 patent's claims was faulty, Lincoln can then amend its interrogatory responses under the confines of Rule 26.

Lincoln's cited law is inapposite as it relates to a case in which the Court refused to compel infringement contentions, in light of the case's early stage of discovery. *See Vosen v. Warren*, No. 04-C-064, 2004 WL 1946396, at *2 (W.D. Wis. Aug. 31, 2004). Here, Lincoln's infringement contentions have already been produced and the parties have agreed to use the extensive discovery of both the '201 and the '815 cases in the '608 case. Accordingly, Lincoln should be compelled to respond to Interrogatory Nos. 10, 17, and 18.

**C.     Transamerica Is Entitled to Discovery Related to the Royalty Rate(s) that Lincoln Alleges Are Relevant With Respect to the '608 Patent.**

Transamerica has propounded Interrogatory No. 12 asking Lincoln to disclose what royalty rate or range of rates it alleges are relevant in this case:

> 12.     Explain what rate (or range of rates) Lincoln alleges is a reasonable royalty rate in the insurance industry and/or financial industry and/or which rate (or range of rates) Lincoln alleges is a reasonable royalty rate with respect to the '608 patent.

The relevance of Interrogatory No. 12 is undisputed. Contrary to Lincoln's assertion, Transamerica is not required to wait for Lincoln's damages expert report to disclose expected royalty rates for this case. *See Medtronic Xomed, Inc. v. Gyrus ENT LLC*, 3:04 CV 400, 2006 U.S. Dist. LEXIS 17202, at *2-3 (M.D. Fla. Mar. 27, 2006) (holding that relevant facts are discoverable before expert testimony). Transamerica is entitled to a response *now* -- Lincoln may supplement or amend its response as the case moves forward, within the confines of Rule 26. Lincoln has no justification for any delay in responding to Interrogatory No. 12. Indeed, in both the '201 and '815 cases, Lincoln and its experts have already taken affirmative positions regarding damages and royalty rates. It should be relatively straightforward for Lincoln to provide an expected royalty rate or range of rates that Lincoln plans to assert against Transamerica in this case -- the '608 patent is related to the '201 and '815 patents, and Lincoln accused some of the same products.

Moreover, as Lincoln notes in its Opposition (Docket No. 125 at 23), it has already been awarded damages in the '201 case for some of the same products accused of infringement in this case. Lincoln is not entitled to double damages from the same products based on infringement of a separate patent. *See Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1017-1018 (Fed. Cir. 2006) (holding impermissible recovery of double damages when two claims for

damages arise out of a single set of operative facts). Transamerica is entitled to know how Lincoln can claim damages in the present case with respect to the accused riders that were also at issue in the '201 case.

**D.      Transamerica Is Entitled to Discovery Related to Competitive Intelligence.**

Transamerica propounded one Interrogatory (No. 16) and several Document Requests (Nos. 67-73) related to Lincoln's efforts to gather competitive intelligence. For example, Interrogatory No. 16 requested:

> 16.     From 1990 to May 2008, explain Lincoln's efforts to gather competitive intelligence, including a) the individuals involved; b) whether the efforts were performed or overseen by a committee; c) how and when the efforts were reported; d) how and when the information gained was disseminated; e) the purpose of such efforts.

This discovery is relevant because it relates to Lincoln's understanding of the annuity market, which has a direct bearing on damages, patent invalidity, and secondary considerations related to obviousness of the '608 patent.

Lincoln has several internal groups, committees, and organizations dedicated to gathering "competitive intelligence." (For a description of Lincoln's "Competitive Intelligence Group," see the Brief In Support of Transamerica's Motion to Amend Answer and Counterclaim, Docket No. 54 at 6-7). Transamerica does not know how many groups or lists Lincoln has associated with gathering, compiling, and analyzing competitive intelligence, thus Transamerica requested that Lincoln produce "all committee notes, minutes, and memorandums regarding or reflecting the efforts of Lincoln to gather competitive intelligence" and "documents written by, received by, or circulated by" individuals that Transamerica learned were within these groups.

The position that Lincoln takes regarding these discovery requests is unsupportable. First, its asserts that the documents are not relevant, but as explained above, documents

responsive to this request bear on damages, patent invalidity, and secondary considerations. Further, Lincoln concedes the relevancy of Document Request Nos. 105 and 106 relating to Lincoln's "Competitive Intelligence Group," stating that it previously produced documents as "potentially" responsive to these requests. Moreover, Lincoln's argument that it has already produced 110,000 pages of "potentially" responsive documents (LIN080720-LIN193009;[1] *see* Docket No. 90 at Ex. 21 at 20) does not withstand scrutiny, since there appears to be few emails in these 110,000 pages.

Lincoln attempts to shift its discovery burden onto Transamerica by requiring Transamerica to propose search terms before it can obtain the relevant discovery. However, Lincoln is in the best position to know what documents it has in its possession, how those documents were gathered, and how the documents were organized. Further, Lincoln has refused to respond to Interrogatory No. 16, requesting that Lincoln describe its efforts to gather competitive intelligence. If Transamerica had a response from Lincoln to this interrogatory, it might be in a position to offer potential search terms to collect the documents.

The burden remains on Lincoln to find and produce documents, not Transamerica. Lincoln has not verified that it has searched all the documents in its possession, custody or control related to the identified "competitive intelligence" groups nor has it verified that all the responsive documents are in the range that it provided. In fact, it appears that Lincoln's list is incomplete given the lack of emails produced. Lincoln's Opposition further demonstrates that it has not satisfied its discovery obligations to look for other responsive documents, because Lincoln says it does not know if other responsive documents exist. (*See* Docket No. 90 at Ex. 25 at 7 ("there may exist other responsive or potentially responsive documents.")).

---

[1] Although Lincoln cites to LIN080720-193009 in its Opposition brief, counsel for Transamerica does not appear to have a copy of a portion of this range, LIN181667-193009.

Finally, Lincoln's claim that the requested documents are privileged and/or work product is unsupported and untenable. It is Lincoln's burden to demonstrate that the documents are protected, but Lincoln does no more than make blanket statements. It fails to provide a privilege log or a basis for Transamerica to understand its position. Such boilerplate objections cannot obstruct meaningful and relevant discovery. *See Response Acquisition LLC v. U.S. Steel Corp.*, No. 2:05 CV 423, 2007 U.S. Dist. LEXIS 83598, at *5 (N.D. Ind. Nov. 8, 2007) ("a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome …" does not meet a party's obligation to show how a discovery request is improper).

### E.     Transamerica Is Entitled to Discovery Concerning Communications Involving the Inventors Relating to Annuity Products/Guaranteed Living Benefits.

Lincoln makes a boilerplate objection to Document Request No. 107 that it is too broad and claims that it has produced 2000 pages of responsive documents, satisfying its obligation.

First, the request is not overbroad. The request asks for "communications involving the named inventors that concern annuity products/guaranteed living benefits." Communications involving "guaranteed living benefits" should only be a subset of any communications that the inventors have. Although Lincoln's Opposition complains about the quantity of the possibly responsive documents, it makes no effort to demonstrate the precise volume of the documents requested. Lincoln cannot follow its boilerplate objections with unsupported and exaggerated document volumes and expect the Court to find its discovery obligation satisfied.

Second, the 2000 pages cited as responsive to the request do not end Lincoln's discovery obligations. The 2000 pages of documents only include the prosecution history and patent applications associated with the '608 patent. (Docket No. 90 at Ex. 21 at 21). The request seeks a broader range of documents to which Transamerica is entitled.

F.  **Transamerica Is Entitled to Discovery Related to Lincoln's Use of Computer Software and Systems Used in Lincoln's Sale, Administration, Operation, and Execution of Annuities.**

Lincoln's only complaint to producing a Rule 30(b)(6) deposition witness knowledgeable about Topic 3 is that the topic is too broad. (Docket No. 125 at 25). Lincoln appears to concede that the requested discovery is relevant to Transamerica's defenses. (*Id.*) It is unavailing for Lincoln to argue that discovery relating to "Lincoln's use of computer software and computer systems in the sale, administration, operation and execution of Lincoln's variable annuity products" is too broad, when Lincoln has asked for this same discovery from Transamerica. Moreover, Transamerica is entitled to discovery related to this topic as the topic relates directly to secondary considerations and damages issues in this case. Accordingly, Lincoln's refusal to produce a witness on this topic is not justified, particularly in light of its boilerplate objection to the breadth of the request. *See Response Acquisition LLC*, 2007 U.S. Dist. LEXIS 83598, at *5.

## CONCLUSION

For the foregoing reasons, and the reasons in its opening brief, Transamerica respectfully requests that the Court grant its Motion to Compel Discovery in its entirety.

Dated:  September 14, 2009

Respectfully submitted,

*/s/ Steven M. Bauer*
Steven M. Bauer (*Pro hac vice*)
Kimberly M. Mottley (*Pro hac vice*)
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
PHONE:  (617) 526-9600
FAX:  (617) 526-9899
sbauer@proskauer.com
kmottley@proskauer.com

John Kenneth Felter (*Pro hac vice*)
ROPES & GRAY LLP
One International Place
Boston, MA 02110
PHONE:  (617) 951-7000
FAX:  (617) 951-7050
Ken.Felter@ropesgray.com

James R. Myers (*Pro hac vice*)
ROPES & GRAY LLP
700 12th Street, N.W., Suite 900
Washington, DC 20005
PHONE:  (202) 508-4600
FAX:  (202) 508-4650
James.Myers@ropesgray.com

ATTORNEYS FOR TRANSAMERICA
FINANCIAL LIFE INSURANCE
COMPANY, TRANSAMERICA LIFE
INSURANCE COMPANY, WESTERN
RESERVE LIFE ASSURANCE
CO. OF OHIO, MONUMENTAL
LIFE INSURANCE COMPANY,
MERRILL LYNCH LIFE INSURANCE
COMPANY and ML LIFE INSURANCE
COMPANY OF NEW YORK,
*DEFENDANTS / COUNTERCLAIM
PLAINTIFFS*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 14th day of September 2009, a copy of the above and foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to Plaintiff's counsel of record:

D. Randall Brown, Esquire
(randy.brown@btlaw.com)
Gary C. Furst, Esquire
(gary.furst@btlaw.com)
Carrie Marie Raver, Esquire
(carrie.raver@btlaw.com)
BARNES & THORNBURG LLP
600 One Summit Square
Fort Wayne, IN 46802

*/s/ Steven M. Bauer*
Steven M. Bauer