# UNITED STATES DISTRICT COURT
# NORTHER DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| **LINCOLN NATIONAL LIFE,** ) | |
| ) | |
| **Plaintiff / Counterclaim Defendant,** ) | |
| ) | |
| v. ) | **CAUSE NO. 1:08-CV-135** |
| ) | |
| **TRANSAMERICA FINANCIAL LIFE** ) | |
| **INSURANCE COMPANY, et al.,** ) | |
| ) | |
| **Defendants / Counterclaim Plaintiffs.** ) | |

## OPINION AND ORDER

This matter is before the Court on the Defendants' Amended Motion to Amend Answer and Counterclaim (Docket # 120) and Motion to Compel Discovery (Docket # 89). Defendants ask the Court for leave to add an allegation that Plaintiff committed inequitable conduct while prosecuting the patent-in-suit by withholding material prior art references from the Patent and Trademark Office ("PTO").[1] The Defendants also ask the Court to compel responses to numerous discovery requests. The Plaintiff opposes both motions. For the reasons provided, the Court will continue to take the Defendants' Motion to Compel under advisement but will GRANT the Motion to Amend.

### I. FACTUAL AND PROCEDURAL HISTORY

On May 20, 2008, Plaintiff filed suit against Transamerica Financial Life, Transamerica

---

[1] The Defendants first raised the question of inequitable conduct in their original Motion to Amend (Docket # 53) filed on November 13, 2008. This Amended Motion to Amend (Docket # 120), expanding on the allegation, was filed on August 26, 2009. Defendants subsequently withdrew their original Motion to Amend during the October 22, 2009 hearing, leaving only the Amended Motion before the Court.

Life Insurance Company, Western Reserve Life Assurance Company, Monumental Life Insurance Company, Merrill Lynch Life Insurance Company, and ML Life Insurance of New York (collectively "Defendants"), alleging infringement of its US Patent No. 7,376,608 (the "'608 Patent"), entitled "Method and Apparatus for Providing Retirement Income Benefits." (Compl. ¶ 17.) Defendants deny infringement and now seek to amend their answer to add a counterclaim that the '608 Patent is invalid because Plaintiff committed inequitable conduct during prosecution by withholding five material prior art references.[2] The Defendants also move to compel responses to numerous discovery requests, most of which relate to their inequitable conduct allegation.

The Plaintiff responds that the Defendants' proposed amendment does not meet the heightened requirements for pleading inequitable conduct as now required after the recent decision in *Exergen Corp. v. Walmart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009). Plaintiff also opposes Defendants' discovery requests, arguing that most are only relevant to the (as yet non-existent) inequitable conduct allegation, and the entire balance are overbroad, ambiguous, irrelevant, incapable of being answered, and seek privileged information.

A hearing was held on October 22, 2009, and arguments were heard on both motions. To sharpen the inquiry, the Defendants were ordered to complete a Court-fashioned "Exergen

---

[2] The five allegedly withheld references are: The Equitable Life Assurance Society of the United States: Separate Account No. 45, Form 485APOS, Post-Effective Amendment (Aug. 31, 1995) ("Equitable 1995 Reference"); The Equitable Life Assurance Society of the United States: FORM POS AM (Aug. 29, 1996) ("Equitable 1996 Reference"); Fortis Benefits Insurance Co.: Form N-4, Variable Account D of Union Security Insurance Co. (June 1, 1999) ("Fortis Reference"); PFL Life Insurance Company: Supplement to the Endeavor Platinum Variable Annuity (Dec. 18, 1998) ("Transamerica Reference"); and, The Manufacturers Life Insurance Company of North America: Form 485BPOS, John Hancock Life Insurance Co. Separate Account H (Apr. 29, 1998) ("Manulife Reference").

2

Pleading Chart," (Docket # 146) detailing how their pleading met each part of the Federal Circuit's new standard, while the Plaintiff was directed to complete its own chart showing how Defendants' pleading was deficient.[3] With those charts now submitted, the record is complete.

## II. DEFENDANTS' MOTION TO AMEND

*A. Standard of Review*

A party may amend its pleading once as a matter of course at any time before a responsive pleading is served; otherwise, it may amend only by leave of the court or by written consent of the adverse party. Fed. R. Civ. P. 15(a). Leave to amend is freely given when justice so requires. *Id*. However, this right is not absolute, *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002), and can be denied for undue delay, bad faith, dilatory motive, prejudice, or futility. *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

However, allegations of fraud are subject to a heightened pleading standard. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Seventh Circuit Court of Appeals has held that the "circumstances" in Rule 9(b) "must be pleaded in detail"—"[t]his means the who, what, when, where, and how" of the alleged fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990); *see also Lachmund v. ADM Investor Servs., Inc*., 191 F.3d 777, 782 (7th Cir. 1999).

The Federal Circuit adopted this reasoning in *Exergen Corp. v. Walmart Stores, Inc*., 575

---

[3] The Defendants' completed chart refers to a great deal of new material that is largely outside the scope of the original pleading. The Court will only consider those allegations and claims originally made in their Amended Answer and Counterclaim.

F.3d 1312, 1325-28 (Fed. Cir. 2009), and held that inequitable conduct, although a broader concept than fraud, must also be plead with particularity.[4] "[F]ollowing the lead of the Seventh Circuit in fraud cases, we hold that in pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id*. at 1327. Furthermore, an inequitable conduct pleading must also "include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id*. at 1328-29.

Nevertheless, "[t]he heightened pleading requirements of Rule 9(b) do not require that [the defendant] definitively prove the merits of its claim. What is determinative here is that [the plaintiff] was given fair notice of the basis for [the defendant's] inequitable conduct defense." *WesternGeco v. Ion Geophysical Corp*., No. 09-cv-1827, 2009 WL 3497123, at *7 (S.D. Tex. Oct. 28, 2009).

### B. Defendants' Inequitable Conduct Pleading is Sufficient

The Defendants' proposed inequitable conduct allegation meets the heightened pleading standard established by the *Exergen* court. As will be discussed, the pleading sufficiently details the "who, what, when, where, and how" of the alleged inequitable conduct.

---

[4] The substantive elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO. *Exergen,* 575 F.3d at 1327 n. 3. (citing *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co*., 537 F.3d 1357, 1365 (Fed. Cir. 2008); *Molins PLC v. Textron, Inc*., 48 F.3d 1172, 1178, 1181 (Fed. Cir. 1995); 37 C.F.R. § 1.56 (2008)).

To begin, the Defendants have sufficiently plead "who" allegedly committed the inequitable conduct. For each of the five references, the Answer and Counterclaim alleges that Plaintiff's lead prosecution counsel, Mr. Bobby Gillenwater, and a named inventor of the '608 Patent, Mr. Denis G. Schwartz, were aware of the references, yet deliberately withheld them from the PTO. (Am. Answer ¶¶ (r), (s), (cc), (ii).) The proposed amendment at issue in *Exergen* only named "Exergen, its agents and/or attorneys" as withholding allegedly material references. *Exergen*, 575 F.3d at 1329. By failing "to name the specific individual associated with the filing or prosecution of the application . . . who both knew of the material information and deliberately withheld or misrepresented it," the court held the pleading failed the "who" requirement. *Id.* Here, by contrast, the Defendants' amendment specifically names two individuals who allegedly withheld material references from the PTO and is therefore sufficient.

Additionally, the pleading adequately states "what" claims and/or limitations in the '608 patent are relevant to the references. For instance, defendants claim that all five references are relevant to Claim 1, and potentially all limitations, of the '608 Patent. (Am. Answer ¶¶ (o), (u), (aa), (gg).) The *Exergen* pleading, however, did not specifically identify which claim the withheld references were relevant to, and was therefore insufficient. *Exergen*, 575 F.3d at 1329. By specifically alleging that the references are relevant to Claim 1, and possibly all limitations, of the '608 Patent, the Defendants' pleading is sufficient.

The Defendants have sufficiently alleged "when" the alleged inequitable conduct occurred. They assert that the Plaintiff was possibly aware of the references as early as January, 2006, when Defendants' expert, Mr. Scott Logan, produced an expert report on claim construction for related litigation that specifically discussed each reference. (Am. Answer ¶¶ (o),

5

(u), (aa), (gg).) Defendants further claim that Plaintiff certainly become aware of the references when Mr. D. Randall Brown, Plaintiff's litigation counsel, deposed Mr. Logan on March 14, 2006. (*Id*.) Finally, Defendants allege that Mr. Logan submitted an additional expert report on November 28, 2007, and was again deposed by Mr. Brown on February 1, 2008. (*Id*.) After drawing the fair inference that Mr. Brown would have at least discussed Mr. Logan's views with Mr. Gillenwater and others within the Plaintiff, Defendants allege that the Plaintiff failed to disclose the five references during subsequent filings with the PTO. (Am. Answer ¶¶ (q), (w), (cc), (ii).) As such, the Defendants' pleading sufficiently alleges when Plaintiffs became aware of the prior art references.

Furthermore, the Defendants have shown "where" in the references the material information is located. In *Exergen*, the court found the pleading deficient because it did not identify where in the references the material information was located. *Exergen*, 575 F.3d at 1329. Here, by contrast, the Defendants do provide enough information in their pleading to put the Plaintiff on notice of where the allegedly material information is located. For example, the Defendants allege that through Mr. Logan's expert report, the Plaintiff had specific knowledge of the "guarantee of income payments for life based on a minimum account value" found in the Transamerica Reference. (Am. Answer ¶ (aa).) Likewise, the Defendants assert that Mr. Logan's expert report revealed to the Plaintiff specific features of the Manulife Reference that were material to the '608 Patent. (Am. Answer ¶ (gg).) Accordingly, the Defendants have satisfied the "where" component of the *Exergen* standard.

The Defendants' pleading also meets the "how" requirement. For each reference, the Defendants allege how the examiner would have used the information in assessing the

6

patentability of the claims. (Am. Answer ¶¶ (q), (t), (z), (ff).)  For example, "[t]he Fortis reference, as the first publicly-available SEC filing describing a [guaranteed minimum withdrawal benefit] ('GMWB') product, was therefore highly material to the ['608 Patent], since it tends to disprove Lincoln's argument regarding secondary considerations.  The Fortis reference also tends to disprove the notion that Lincoln was the first to conceive of GMWBs." (Am. Answer ¶ (t).)  Similarly, the Defendants allege that "[t]he Manulife reference discloses a variable annuity plan with account value liquidity and guaranteed minimum payments, which are features the Examiner found to be missing from at least Claim 1 of the '608 Patent and was therefore highly material to the prosecution of the '608 Patent." (Am. Answer ¶ (ff).) Accordingly, the Defendants pleading meets the *Exergen* court's "how" requirement. *See, e.g.*, *Synventive Molding Solutions, Inc. v. Husky Injection Molding Systems, Inc.*, No. 2:08-cv-136, 2009 WL 3172740, at *3 (D. Vt. Oct. 1, 2009) (finding the "how" requirement met after comparing features of the patent and the reference).

Finally, unlike in *Exergen*, where the pleading simply alleged that the plaintiff was aware of two prior patents but provided no additional facts to infer that an individual knowingly withheld material information, 575 F.3d at 1330, the Defendants here have alleged sufficient facts to create a reasonable inference of scienter.  As discussed, the Defendants have claimed that during the prosecution of the '608 Patent, at least two individuals knew of the withheld references. (Am. Answer ¶¶ (r), (s), (cc), (ii).)  The Defendants have also alleged that each of these references was highly material to the '608 Patent, yet was not disclosed to the examiner, despite the filing of subsequent documents with the PTO.  These allegations are sufficient to create a reasonable inference that the references were withheld deliberately in order to deceive

7

the PTO. *See Synventine*, 2009 WL 3172740, at *3 (finding a reasonable inference of scienter after defendant "specifically alleged the individuals involved, the information withheld and why it was material").

It remains to be seen whether the Defendants' inequitable conduct claim will survive a motion for summary judgment. As the Plaintiff repeatedly argues, the Defendants have not proved that any inequitable conduct occurred. That, however, is not the point of notice pleading. The Court simply holds that the Defendants' pleading meets the *Exergen* "who, what, when, where, and how" standard. The briefing on the Amended Motion to Amend, the October 22, 2009 hearing, and the Exergen Charts certainly put the Plaintiff on notice of the inequitable conduct allegation, which is ultimately what is required by the Federal Rules of Civil Procedure. *See WesternGeco*, 2009 WL 3497123, at *7. The Defendants will therefore be granted leave to amend their Answer to add an allegation of inequitable conduct.

### III. DEFENDANTS' MOTION TO COMPEL

The Defendants have also filed a Motion to Compel (Docket # 89), which the Plaintiff opposes. The Motion to Compel was, however, filed while the first Motion to Amend was pending and the majority of the Plaintiff's objections are based on the purported lack of an inequitable conduct claim. As the Plaintiff observes, "[t]he overwhelming majority of Transamerica's discovery requests and deposition topics at issue (namely, 48 of 55) seek information and documents related to inequitable conduct which currently is not a claim and/or defense in this litigation." (Pl.'s Resp. to Defs.' Mot. To Compel ("Pl.'s Resp.") 2). The Plaintiff indicated, however, that if the inequitable conduct claim were to be allowed, it would "promptly revisit its position and meet and confer with [Defendants] regarding the requests . . . [.]" (Pl.'s

Resp., Ex. 1, p. 2.)

The Court will therefore continue to take the Motion to Compel under advisement. Counsel are to meet and confer in accordance with Local Rule 37.1 and file a joint discovery status report by December 18, 2009.

## IV. CONCLUSION

The Defendants' Amended Motion to Amend (Docket # 120) is GRANTED, and the Clerk is directed to show the Amended Answer and Counterclaim filed. The Plaintiff is to file a Response to the Amended Answer and Counterclaim on or before December 18, 2009. The Defendants' Motion to Compel (Docket # 89) remains under advisement and the parties are directed to file a joint discovery status report on or before December 18, 2009, addressing the issues remaining for the Court's consideration.

SO ORDERED this 30th day of November, 2009.

S/Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge